Stump, Appellant, *v.* Follmer Trucking Company.

Argued April 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Elizabeth H. Kury,* with her *Kury and Kury,* for appellant.

*E. C. Marianelli,* for appellee.

OPINION BY MR. JUSTICE EAGEN, June 28, 1972:

For two years prior to his death on September 5, 1962, David A. Stump was employed by Follmer Trucking Company. His widow, Miriam G. Stump, alleging her husband's death was caused by an accident in the course of his employment instituted a claim on behalf of herself and her daughter for workmen's compensation benefits under the Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §§1 et seq. A hearing was held before a compensation referee and an adjudication including findings of fact and conclusions of law was entered, and the claimant was granted an award of compensation. An appeal was taken to the Workmen's Compensation Board, which reversed the adjudication of the referee, denied compensation and dismissed the claimant's petition. Subsequently, an appeal was filed in the Court of Common Pleas of Montour County which reversed the Board and reinstated the award by the referee. Thereafter, the case was appealed to the Commonwealth Court which reversed the judgment of the Court of Common Pleas and reinstated the order of the Board dismissing the claimant's petition. We granted allocatur limited to "consideration of whether emotional excitement experienced by petitioner's decedent as a result of the collision can constitute a causal link between the accident and decedent's death which

is sufficient for purposes of the Workmen's Compensation Act." We now reverse and remand the case to the Board for consideration consonant with this opinion.

The testimony given before the referee indicates the following:

In the early morning hours of September 5, 1962, David A. Stump was operating a tractor-trailer truck owned by Follmer Trucking Company, in an easterly direction on Route 61 in the Borough of Frackville. The vehicle struck a large tree limb overhanging the roadway and the tree was uprooted. The impact caused extensive damage to the upper right-hand corner of the trailer and ripped out the electrical coupling plug between the trailer cab and the trailer. Stump stopped the truck approximately 120 feet from the point of impact, and took the necessary safety measures to immobilize the vehicle. He then proceeded to the rear of the truck holding a flashlight in his hand. Shortly thereafter, he was observed by another truck driver lying on the sidewalk near the tree. Although conscious, he was unable to speak, and was clutching his stomach with his hands in apparent pain. He was removed to a nearby doctor's office and died within the hour. An autopsy was performed and the cause of death was found to be acute coronary artery thrombosis.

At the hearing, Follmer admitted decedent had been involved in an accident in the course of his employment and that he died from a coronary thrombosis, but disputed the claim for compensation on the grounds that death was due to natural causes, and there was no causal connection between the accident and the death. The claimant, on the other hand, contended the death was causally related to the accident in one of two ways: (1) the collision caused a trauma to decedent's body which precipitated the death; (2) the emotional or psychological excitement which followed the collision was suffi-

cient to precipitate the thrombosis or accelerate and/or aggravate the thrombosis to the point where it caused the death.

Five doctors testified at the hearing, and all agreed that the ultimate cause of death was a coronary thrombosis. There was also no dispute that prior to the date of the accident, Stump suffered from arteriosclerosis of the left coronary artery.[1] However, there was sharp disagreement in the testimony of these experts as to whether or not the accident, or more precisely, the emotional excitement resulting therefrom could precipitate or contribute to the development of the coronary thrombosis. The medical witnesses for Follmer stated categorically, that in their opinion, there could be no such connection. But, a medical witness called by the claimant was just as emphatic in his opinion, that the emotional excitement resulting from the accident "was sufficient to initiate or precipitate or contribute to the development" of a coronary thrombosis.

The Board did not see fit to resolve this conflict in the testimony or to decide if there existed any causal connection between the emotional excitement resulting from the accident and the thrombosis. Citing *Bussone v. Sinclair Refining Co.*, 210 Pa. Superior Ct. 442, 234 A. 2d 195 (1967), it stated emotional excitement is not such a fortuitous, untoward or unexpected happening as to constitute an accident, and since it was not established the thrombosis was caused by trauma, compensation was not recoverable. This was an error of law.

---

[1] This pre-existing condition would not defeat the right to recover under the Workmen's Compensation Act. Compensation will be paid if the accident precipitated death or aggravated the deceased's pre-existing disease or condition, since the accident need not be the sole or primary cause of death. See generally *Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A. 2d 601 (1969) ; *Mohler v. Cook*, 205 Pa. Superior Ct. 232, 209 A. 2d 7 (1965) ; *Morgan v. Michael Baker, Jr., Inc.*, 204 Pa. Superior Ct. 521, 205 A. 2d 668 (1964).

The decisive question confronting the Board was not if the emotional excitement can constitute an accident, but rather whether such emotional excitement resulting from an accident can cause, precipitate or contribute to the happening of a coronary thrombosis, and, if so, was such a causal connection established in this case. *Bussone v. Sinclair Refining Co.,* supra, did not concern this question and is completely inapposite.

Whether such a causal connection existed herein is for the Board to decide, and the record will be remanded for that purpose. We rule that if such causal connection is established, then the death is compensable under the Workmen's Compensation Act.

It seems inconsistent, if a coronary thrombosis can be precipitated, or caused or contributed to either by physical trauma or emotional excitement that the courts should be willing to accept the physical as causative, but reject the emotional, given the present state of medical knowledge.[2]

Moreover, it would be inconsistent with our recent rulings in *Niederman v. Brodsky,* 436 Pa. 401, 261 A. 2d 84 (1970), and *Hamilton v. Procon, Inc.,* 434 Pa. 90, 252 A. 2d 601 (1969), to require some form of physical trauma, or to hold that only physical trauma can form the causal link between an accident and death. In *Niederman,* this Court in abandoning the impact rule held, that damages may be recovered for injuries resulting from fright or shock proximately caused by the negligence of another, even though no contemporaneous physical impact occurred. In *Hamilton,* in ruling on the unusual strain doctrine, we refused to require physical

---

[2] See generally Larson, *Law of Workmen's Compensation,* Vol. 1A, §42.21 (1967) ; *Marotte v. State Compensation Insurance Fund,* 145 Colo. 99, 357 P. 2d 915 (1961) ; *Insurance Department of Mississippi v. Dinsmore,* 233 Miss. 569, 102 So. 2d 691 (1958) ; *Reynolds v. Public Service Coordinated Transport,* 21 N.J. Super. 528, 91 A. 2d 435 (1952).

trauma and allowed recovery. Although these cases are not directly on point, for us now to rule that physical trauma is necessary or physical trauma is the only possible causal link would require us to overlook the underlying philosophy of these rulings, as well as the advancements made in the area of the medical arts.[3]

The Order of the Commonwealth Court is reversed and the record is remanded to the Workmen's Compensation Board for further consideration consonant with this opinion.[4]

Mr. Justice POMEROY concurs in the result.

---

[3] As Mr. Justice ROBERTS aptly stated in *Niederman*:

"While we agree that this might have been an appropriate conclusion because of the lack of sophistication in the medical field when the impact doctrine was first announced in 1888, it would presently be inappropriate for us to ignore all of the phenomenal advances medical science has achieved in the last eighty years. Today diseases of the heart, for example, are comprehended much more fully (to the extent that open heart surgery is almost an everyday occurrence), and the effects of hyperemotional states of the human body no longer are shrouded in mystery or myth.

"New equipment and research, improved education and diagnostic techniques, and an increased professional understanding of disease in general require us now to give credit to medical evidence. Other jurisdictions have also recognized that this advancement in the medical arts should and could be legitimately reflected in changes in the legal field. See, e.g., *Battalla v. State*, 10 N.Y. 2d 237, 219 N.Y.S. 2d 34, 176 N.E. 2d 729 (1961) ('we must . . . rely to an extent on the contemporary sophistication of the medical profession') ; *Robb v. Pennsylvania Railroad Company*, 210 A. 2d 709, 712 (Del. 1965) ('the early difficulty in tracing a resulting injury back through fright or nervous shock has been minimized by the advance of medical science'). Finally, the American Law Institute through a deletion of a caveat from one of its comments, has expressed a similar view." 436 Pa. 405-06, 261 A. 2d at 86.

[4] We express no opinion on whether claimant did in fact establish that emotional excitement was a causal factor in the death. Since the Board's mistake of law precluded it from correctly considering this question, we must remand the record to the fact finder for appropriate consideration and decision of this factual issue.