University of Pittsburgh and Pennsylvania Manufacturers' Association Insurance Company, Petitioners *v.* Marla Perlman, Widow of Lawrence V. Perlman, Deceased, Respondent.

Argued May 11, 1979, before Judges BLATT, DI-SALLE and MACPHAIL, sitting as a panel of three. Reargued February 5, 1980, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT, MACPHAIL and WILLIAMS, JR. Judges MENCER and CRAIG did not participate.

*Leonard P. Kane, Jr.*, with him, *Fried, Kane, Walters & Zuschlag*, for petitioners.

*Jerome M. Libenson*, with him, *Baskin & Sears*, for respondents.

OPINION BY JUDGE BLATT, September 11, 1979:

The University of Pittsburgh (employer) and its insurer appeal from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision awarding benefits to Marla Perlman (claimant) for the death of her husband (decedent).

The decedent, a medical doctor, was employed as the director of the employer's Falk Clinic, as a coordinator of its ambulatory health care program, and as a professor of internal medicine. The record appears to indicate that the pressures of his extensive responsibilities and the frustration at his inability to obtain the necessary support and cooperation of the various departments with which he dealt, ultimately

led to his feeling that he was failing in his job and to a fear that he would be discharged and his reputation ruined. When he began to show obvious signs of serious mental stress he sought the help of a psychiatrist, Paul Conrad, M.D., and, when his superiors became aware of the situation, he was placed on an indefinite leave of absence with full pay. He committed suicide five days later.

The claimant filed for workmen's compensation benefits, and the referee concluded that the death was the result of an injury within the meaning of The Pennsylvania Workmen's Compensation Act (Act).[1] He, therefore, upheld her claim, but the Board set the award aside and remanded the case for the appointment and testimony of an impartial medical expert. The referee then appointed a psychiatrist, Herbert E. Thomas, M.D., who gave testimony consistent with that previously given by Dr. Conrad and the referee then made the following crucial findings of fact:

SEVENTH: Dr. Paul Conrad testified that the deceased was suffering from a psychotic depressive reaction which was caused by the impossible situation found in his work. This condition was first diagnosed on April 1, 1975.

. . . .

ELEVENTH: Dr. Conrad stated, it is found as a fact by the Referee, that the psychotic depressive reaction caused by the working conditions was a state of mind of the deceased when he committed suicide; and he was suffering from such a state of anxiety that he could not think rationally and was in a state of frenzy at that time.

. . . .

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq.

FIFTEENTH: It is found as a fact by your Referee, based on all the facts, that the deceased's death was caused by working conditions peculiar to his employment and that his suicide was the result of a delirium frenzy caused by the psychotic depressive reaction caused by and arising within his employment.

. . . .

TWENTIETH: Dr. Thomas stated and it is found as a fact by the Referee, that on May 17, the decedent was possessed by an uncontrollable 'mental attitude or frenzy' that prompted him to take his life and that this condition was related to his work at the University of Pittsburgh.

TWENTY-FIRST: Dr. Thomas stated, and this Referee finds as a fact, that the diagnosis in this case is clearly that of psychotic depressive reaction, that a psychotic depressive [reaction] is a mental illness, which was the decedent's condition immediately prior to his taking his life, which accounts for decedent's suicide, and said condition was directly related to his employment at the University of Pittsburgh.

The referee again made an award to the claimant, which the Board affirmed, and this appeal followed.

In *Workmen's Compensation Appeal Board v. Sullivan,* 22 Pa. Commonwealth Ct. 386, 388, 348 A.2d 925, 926 (1975), we said:[2]

---

[2] This test, which is the present law of the Commonwealth, is based on the leading case of *In re Sponatski*, 220 Mass. 526, 108 N.E. 466 (1915). The *Sponatski* rule, as it has become known, has undergone considerable modification in most jurisdictions, and has been judicially critized in Pennsylvania. See *Zimmiski v. Lehigh Valley Coal Co.*, 200 Pa. Superior Ct. 524, 529, 189 A.2d 897, 899 (1973) (dissenting opinion). Our courts have apparently

It has been held that if an employee kills himself 'while possessed by an uncontrollable insane impulse or while in a delirium of frenzy, as a direct result of the accident without rational knowledge of the physical consequences of his act,' the death is not intentionally self-inflicted within the meaning of the Act and benefits may be awarded if other statutory requirements are satisfied.

Because of the 1972 amendment[3] to Section 301(c) of the Act, 77 P.S. §411, of course, the word "accident" above should be read as "injury", so the issue here then is whether or not mental illness may be considered an "injury" within the meaning of the Act as argued by the claimant. The employer argues, to the contrary, that the term "injury" is confined to the occurrence of physical harm to the body.

Before the 1972 Amendments, Section 301(c) of the Act, 77 P.S. §411, read:

The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean only violence to the physical structure of the body, and such disease and infection as naturally results therefrom. . . .

Because of the 1972 Amendments this section now reads:

(1) The terms 'injury' and 'personal injury', as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto,

bent the rule on a number of occasions. See 1A A. Larson, Workmen's Compensation Law §36.22, at 6-131 (1979). We need not pass on the continuing vitality of the *Sponatski* rule here, however, because the claimant has established her case within its criteria.

[3] Section 7 of the Act of March 29, 1972, P.L. 159.

and such disease or infection as naturally results from the injury or is aggravated, reactivated, or accelerated by the injury.

The most significant change in the language is the deletion of the words "violence to the physical structure of the body," and we have previously interpreted this deletion as abolishing the requirement of an accident. *Workmen's Compensation Appeal Board v. Jeddo Highland Coal Co.,* 19 Pa. Commonwealth Ct. 90, 338 A.2d 744 (1975). It is now apparent to us that the legislature has also abolished the requirement of an injury to the "physical structure of the body."[4] We believe, therefore, that work-related mental illness can be a compensable injury under the Act.

In so ruling, moreover, we are only following the lead of the majority of courts which have already considered the issue as well as the consensus of medical opinion.[5] As Professor Larson has observed:

[T]here is no really valid distinction between physical and 'nervous' injury. Certainly modern medical opinion would support this view, and insist that it is no longer realistic to draw a line between what is 'nervous' and what is 'physical.' It is an old story, in the history of law, to observe legal theory constantly adapting itself to accommodate new advances and knowledge in medical theory. Perhaps, in earlier years, when much less was known about

---

[4] The employer argues that the words "regardless of his previous condition" imply that "injury" is still confined to the physical structure of the body. While we concede that this conclusion is a possible inference, we are bound to construe the Act liberally in favor of the worker. *See Plasteel Products Corp. v. Workmens Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 405, 379 A.2d 908 (1977).

[5] *See* Larson, *supra,* §42.23.

mental and nervous injuries and their relation to 'physical' symptoms and behavior, there was an excuse, on grounds of evidentiary difficulties, for ruling out recoveries based on such injuries, both in tort and in workmen's compensation. But the excuse no longer exists. And therefore a state which would withhold the benefits of workmen's compensation [because the injury is not physical] would nowadays be doing unjustifiable violence to the intent of the workmen's compensation act, for reasons that are without support in either legal or medical theory.

1B A. Larson, Workmen's Compensation Law, §42.23(a), at 7-632 (1978).

We must hold, therefore, that where as here there is competent and unequivocal medical testimony to support a determination that the employee is disabled by a work-related mental illness, a referee may properly conclude that the employee has suffered a compensable injury within the meaning of the Act. And, because the decedent here, having suffered an injury within the meaning of the Act, took his life in an irrational frenzy as a direct result of the injury suffered, his widow is entitled to benefits.

The order of the Board is therefore affirmed.

Judge MACPHAIL dissents.

### ORDER

AND Now, this 11th day of September, 1979, the order of the Workmen's Compensation Appeal Board is hereby affirmed, and judgment is entered in favor of Marla Perlman and against the University of Pittsburgh. The employer and/or its insurer are ordered to pay compensation at the rate of $171.00 per week beginning May 17, 1975, and continuing until the eighteenth birthday of the claimant's youngest de-

pendent child, to be thereafter adjusted in accord with the provisions of the Act. The employer and/or its insurer are also ordered to pay funeral expenses in the amount of $1,175.00, interest on accrued compensation at 10 percent per annum, and counsel fees at 20 percent as approved by the referee.

It is further ordered that the Board pay the following expenses of the impartial medical expert:

Herbert E. Thomas, M.D. ............. $300.00.

---

PER CURIAM MEMORANDUM OPINION, March 17, 1980:

After our decision in this case was handed down on September 11, 1979, the petitioners filed a timely application for reargument. Their application was granted and reargument was heard before the Court en banc. Having reconsidered the issues raised, we find no reason to change our previous opinion. The order will be amended, however, to correct our erroneous reference to the continuation of benefits until the eighteenth birthday of the claimant's *youngest* dependent child so that full benefits will continue until the eighteenth birthday of the claimant's oldest dependent child with suitable adjustment made thereafter.

PER CURIAM ORDER

AND Now, this 17th day of March, 1980, the order of this Court in the above-captioned matter dated September 11, 1979, is hereby affirmed and amended to read as follows:

AND Now, this 11th day of September, 1979, the order of the Workmen's Compensation Appeal Board is hereby affirmed, and judgment is entered in favor of Marla Perlman and against the University of Pittsburgh. The employer and/or its insurer are ordered to pay

compensation at the rate of $171.00 per week beginning May 17, 1975, and continuing until the eighteenth birthday of the claimant's oldest dependent child, to be thereafter adjusted in accord with the provisions of the Act. The employer and/or its insurer are also ordered to pay funeral expenses in the amount of $1,-175.00, interest on accrued compensation at 10 percent per annum, and counsel fees at 20 percent as approved by the referee.

It is further ordered that the Board pay the following expenses of the impartial medical expert:

Herbert E. Thomas, M.D. . . . . . . . $300.00.

President Judge BOWMAN did not participate in the decision in this case.

Judge WILKINSON, JR. and Judge MACPHAIL dissent.