William A. McDonough, Petitioner *v.* Workmen's Compensation Appeal Board (Commonwealth of Pennsylvania, Department of Transportation), Respondents.

Argued November 17, 1983, before Judges ROGERS, MACPHAIL and BARRY, sitting as a panel of three.

*Richard S. Campagna,* for petitioner.

*Paul J. Dufallo,* Assistant Chief Counsel, for respondent, Department of Transportation.

OPINION BY JUDGE ROGERS, January 24, 1984:

William A. McDonough, a workmen's compensation claimant, has appealed from an order of the Workmen's Compensation Appeal Board affirming the action of a referee denying him disability benefits for a chronic and acute anxiety reaction which he contended was the result of pressure and harassment suffered on the job. The issue is that of whether the claimant produced unequivocal medical evidence that his mental illness was the result of his employment.

The claimant began working at the Pennsylvania Department of Transportation as a traffic control technician in 1962. He testified that from 1962 until 1970, his superior regularly singled him out for criticism in the presence of other persons at the work place. This caused him to develop a fear of going to work which in turn caused him to report late or to use vacation days to avoid going to work at all. The record shows that in 1970 the claimant collapsed while at his drafting table and was taken to the hospital where he was advised to seek psychiatric help.

The superior officer who allegedly mistreated the claimant left the Department of Transportation in 1970. Although the new supervisor did not behave toward the claimant in the same fashion as his predecessor, the claimant's negative feelings about his work and his tardiness continued. In September of 1978, the claimant consulted Dr. Charles R. Druffner to ascertain whether his problems had a physical cause. Dr. Druffner found none, and advised him to see a psychiatrist. The claimant began meeting with Dr. Anthony Galdieri, a clinical psychologist, on December 14, 1978. Six days later, he was taken to the hos-

pital from work after fainting and bruising his head
when he stepped outside for some air because he began
to feel anxious and short of breath. The claimant has
not returned to work since this fall.

At the referee's hearing, the claimant testified to
his work and medical experiences as we have related
them. A former co-worker, John Culkin, corroborated
the claimant's testimony as to his work experience,
testifying that the superior officer during the years
before 1970 would go out of his way to remonstrate
the claimant and that the claimant "was a very like-
able young man" but that during the course of his em-
ployment "he sort of got himself into a shell . . . [and]
required a lot more pushing, shall I say, to get assign-
ments under way and coming in late to work and days
that he did not come in, he would call, either on sick
leave or annual leave and it steadily increased, and
although the work he did perform was good."

Dr. Galdieri testified that the claimant had no his-
tory of psychological problems prior to his employ-
ment with the Pennsylvania Department of Trans-
portation; that during his first appointment with the
doctor, the claimant exhibited the symptoms which
first manifested themselves in 1970 when the claimant
collapsed at work; that the claimant had been totally
disabled since January 17, 1979; and that his work ex-
perience was a substantial cause of his mental illness.

Dr. Galdieri diagnosed the claimant's illnesses as
panic disorder associated with hyperventilation, anx-
iety disorder and dependent personality disorder. He
described the symptoms as "massive amounts of anx-
iety, fear of losing his breath, dizziness, . . . hyperven-
tilation, . . . confusion . . . [and] panic attacks . . .
where for no particular surface reason, a person can
have a tremendous surge of anxiety."

The referee found that "[t]hat from 1962 to 1970,
the claimant's boss . . . was critical of claimant's work

in a voice loud enough for co-employees to hear''; that ''[f]rom 1970, the claimant was suffering from an anxiety disorder which caused the claimant to be afraid to go to work''; and that ''the claimant has been totally disabled by his mental condition since January 17, 1979.'' He, however, denied the claimant compensation because he considered Dr. Galdieri's testimony insufficient to establish that there was a causal connection between the claimant's mental condition and his job. The referee discounted Dr. Galdieri's testimony, not because the witness lacked credibility, but because the referee believed that the testimony was, in his terms, ''highly speculative'' and that Dr. Galdieri had merely ''surmised that the claimant's condition 'would appear to be work-related.' ''

In affirming the referee's decision, the Workmen's Compensation Appeal Board commented ''that it would appear even if the work did play a part [in causing the claimant's disability], it was merely the claimant's subjective reaction to normal conditions.''

We have concluded that the referee erred in his determination that Dr. Galdieri's testimony was in effect equivocal and that the Appeal Board's finding that there was no evidence of other than normal working conditions impinging upon the claimant's psyche was in disregard of the referee's finding that ''[f]rom 1962 to 1970, the claimant's boss . . . was critical of the claimant's work in a voice loud enough for co-employees to hear,'' which circumstance is surely not a normal working condition.

Concerning the quality of Dr. Galdieri's testimony, we note that during direct examination, Dr. Galdieri expressed an opinion as to whether the claimant's disability was a result of his work as follows:

Q: Doctor, were you able to, from your records and from your examination, were you able to diagnose the cause of this condition?

A: The cause of the condition would appear to be his work. . . . [T]he only area that he began to have difficulty in was at work, so it would lead us to strongly believe that work would be the problem here before him.

Q: Doctor, if the testimony were to show that in the course of his employment with Penn-Dot since he started in 1962, and from the beginning over a period of approximately eight years until 1970, his superior singled him out for certain criticism and that his criticism was directed at Mr. McDonough in a rather public manner, that is so that every one in the area and fellow employees could hear and were aware of the criticism and that other people working in the same area did not receive the same type of treatment from this superior, would this, in your opinion, contribute to this condition that you found in Mr. McDonough?

A: Absolutely.

Q: Would you consider it a substantial cause of this condition?

A: Yes, I would have to.

On cross-examination, the employer's counsel questioned Dr. Galdieri concerning other causes of the claimant's mental illness outside his employment.

Q: You state in your testimony that you thought the cause of the condition appeared to be work because the attacks seem to appear at work. On the basis of what you've just stated, isn't it also possible that something outside of work. . . .

A: It's a possibility, it's a possibility, yes, sir.

However, during redirect examination, Dr. Galdieri answered yes when asked "Is it still your opinion that

the disabling condition, as you found it, is due to the forces acting upon him at work?''

The purport and effect of Dr. Galdieri's testimony was that the claimant's disabling condition was the result of his work. We find little, if any, real difference between the facts of this case and those of *University of Pittsburgh v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 347, 405 A.2d 1048 (1979), in which we held that a suicide induced by a work-related mental breakdown was a compensable injury where the medical testimony was to the effect that the mental breakdown was the result of overwork and work-related anxiety. The instant claimant's medical evidence, in our judgment, meets the test of unequivocal medical testimony described in *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 202, 206-207, 465 A.2d 132, 134-135 (1983).

> Certainly it is not the law, as it has been sometimes argued, that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception, or peradventure of a doubt. We repeat, that as to facts which a claimant must prove by medical evidence, it is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist. The claimant has, in such event, produced competent evidence of the facts which, if accepted by the factfinder will support an award, even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details; so long as the witness does not recant the opinion or belief first expressed.

Order reversed; the record is remanded to the Appeal Board for a computation of compensation payable. Jurisdiction is relinquished.

ORDER

AND Now, this 24th day of January, 1984, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is reversed and the record remanded for a computation of compensation payable. Jurisdiction is relinquished.

Judge MACPHAIL dissents.