Samuel D. Russella, Petitioner *v.* Workmen's Compensation Appeal Board (National Foam Systems, Inc.), Respondents.

Argued June 3, 1985, before Judges CRAIG and MACPHAIL, and Senior Judge KALISH, sitting as a panel of three.

*Stephen W. Bruccoleri, Gustine J. Pelagatti, Pelagatti & Bruccoleri, P.C.,* for petitioner.

*John P. Knox,* with him, *David R. Weyl, Timoney, Know, Hasson & Weand,* for respondent, National Foam Systems, Inc.

OPINION BY JUDGE MACPHAIL, September 4, 1985:
Samuel D. Russella (Claimant) appeals here from a decision of the Workmen's Compensation Appeal Board (Board) which denied compensation to him.

Claimant worked for National Foam Systems, Inc. (Employer) for a little over ten years as a rim man. His duties included cutting and bending pipe, grinding metal, welding metal and drilling metal. His duties did not vary over his years of employment. On January 23, 1977, Claimant complained to his supervisor of headaches, dizziness and mucous which was rust colored and black. He left work that day and did not return.

Claimant had been treated by several doctors for several years prior to 1977 for a variety of symptoms such as shortness of breath, weakness, headaches, nausea, vomiting, lassitude and inability to function. He said he was afflicted with a cardiovascular condition in 1969 which caused him headaches and dizziness on occasion and that he suffered a concussion in an automobile collision in 1975. He was treated for hypertension in 1972 and was also diagnosed as having hypothyroidism.

Claimant, of course, had the burden of proving his right to compensation; *i.e.,* he had to prove that he had suffered an injury arising from his employment and related thereto. Because Claimant originally prevailed before the referee and the Board took no additional evidence, we must determine whether

the referee's findings were supported by substantial record evidence and whether the referee erred as a matter of law. *Bell Telephone Co. v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa. Commonwealth Ct. 558, 487 A.2d 1053 (1985).

One of Claimant's physicians, Dr. Bass, testified that although he could find no major physical abnormalities, Claimant, nevertheless, was unable to function in his work place because he suffered from severe neurasthenia, an emotional disorder which affects the physical capacity of an individual to function because of a combination of anxiety and depression.

This Court has had several opportunities[1] to discuss the nature of psychiatric injuries which are unaccompanied by physical trauma and the requisites for compensability pursuant to Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act).[2] The seminal case which articulated the criteria for compensability of such injuries is *Thomas v. Workmen's Compensation Appeal Board, (Thomas Atlantic Refining Co.)*, 55 Pa. Commonwealth Ct. 449, 423 A.2d 784 (1980), which has been neither reversed nor overruled.

We find the reasoning in *Thomas (Atlantic Refining Co.)* to be sound, and reiterate our earlier conclusion. "Due to the highly subjective nature

---

[1] In *Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa. Commonwealth Ct. 558, 487 A.2d 1053 (1985), this Court discussed the development of the law relative to psychiatric injuries caused by mental stimuli, and summarized the cases which have facilitated this development. We are not concerned in the instant case with those circumstances in which a psychiatric injury is caused by a physical trauma or stimulus nor with those in which physical injury is caused by a mental stimulus.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(1).

of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed." *Id.* at 455, 423 A.2d at 787. As cases subsequent to *Thomas (Atlantic Refining Co.)* have made clear, "evidence of an employee's subjective reaction to being at work and being exposed to normal working conditions is [not] an injury under the Act." *Id.* at 456, 423 A.2d at 788. *See, e.g., Hammerle v. Workmen's Compensation Appeal Board (Department of Agriculture)*, 88 Pa. Commonwealth Ct. 486, 490 A. 2d 494 (1985); *Bell Telephone Co.; Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 87 Pa. Commonwealth Ct. 436, 487 A.2d 477 (1985). Furthermore, it is clear that "Claimant's distorted, subjective reactions to his work cannot alone provide the necessary causal relationship between his employment and his mental disability." *Hirschberg v. Workmen's Compensation Appeal Board (Department of Transportation)*, 81 Pa. Commonwealth Ct. 579, 583, 474 A.2d 82, 85 (1984).

There must be objective evidence that a claimant has been exposed to other than normal working conditions before a psychiatric injury will be found to be compensable. *Bell Telephone Co.; Evans; McDonough v. Workmen's Compensation Appeal Board (Department of Transportation)*, 80 Pa. Commonwealth Ct. 1, 470 A.2d 1099 (1984). A claimant must produce objective evidence which is corroborative of his subjective description of the working conditions alleged to have caused the psychiatric injury. Because psychiatric injuries are by nature subjective, we believe that if a claimant has met his burden of proving the existence of a psychiatric injury, he cannot rely solely upon his own account of his working environment to sustain his burden of proving that the injury was not caused by a subjective reaction to

normal working conditions. A claimant's burden of proof to recover workmen's compensation benefits for a psychiatric injury is therefore twofold; he must prove by objective evidence that he has suffered a psychiatric injury and he must prove that such injury is other than a subjective reaction to normal working conditions.

We will look now to the application of the above principles in the instant case.

Following hearings and the receipt of evidence, the referee determined that Claimant had met his burden of proof and awarded benefits. Employer's appeal to the Board from that decision resulted in an order by the Board reversing the referee's decision and remanding the matter for an additional hearing pursuant to Section 108(n) of the Act[3] to determine whether Claimant suffered from an occupational disease. Claimant refused to proceed under Section 108(n) and the referee reversed his original decision. Following an appeal of that second decision, the Board rescinded its own initial decision,[4] reinstated the referee's original decision, and reversed said decision resulting in a denial of benefits to Claimant.

We find substantial evidence in the record to support the determination that Claimant suffered from a psychiatric disorder. The more difficult question arises concerning causation. Claimant testified that he was exposed to considerable dust and fumes at his workplace. R. 6a-8a. Claimant's medical expert, Dr. Bass, testified that Claimant's psychiatric disorder was caused by his exposure to noise, dust and

---

[3] Added by Section 1 of the Act of October 17, 1972, P.L. 930, as amended, 77 P.S. §27.1(n).

[4] The Board by then had the benefit of our decision in *Thomas (Atlantic Refining Co.)*.

other conditions in the workplace. R. 51a. Dr. Bass further testified, however,

> I further qualify my answer by stating with reasonable medical certainty that the situation as manifested by Mr. Russella *was as he perceived it and as he felt it was* and that this reacted within the framework of his physiology to correspond to the symptomotology that was found on the examinations that I conducted on him.

R. 51a (emphasis added).

> It's Mr. Russella's *impression* of his working environment that brought about his symptoms.

R. 58a (emphasis added).

> It means that he—the sensitivity of people who have these problems are heightened and their pain threshold is very low and their sensitivities are heightened as evidenced by someone dropping something on the floor behind someone. One person will jump sky high and other people will just remain calm. It is just the sensitivity level in this particular individual is heightened. *It is how he perceived the situation to be.*

R. 59a (emphasis added).

Dr. Bass admitted that he did not have firsthand knowledge of conditions at Claimant's workplace. Claimant's counsel stipulated that the workplace is not noisy to others but it was noisy to Claimant. Assuming, without deciding, that dust, fumes and noise in a machine shop may constitute abnormal working conditions, the record here is devoid of any objective evidence that these conditions existed. In summary, there is no evidence in this case that Claimant's injury was anything other than his subjective reaction to normal working conditions. As we have noted,

this Court has consistently held that such injuries are not compensable.

The order of the Board is affirmed.

ORDER

The order of the Workmen's Compensation Appeal Board dated March 8, 1984, No. A-83913, is hereby affirmed.

Judge BARRY did not participate in the decision in this case.

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent. The majority starts with the general principle that a claimant has the burden of proving the injury sustained arises from the employment and is related thereto. This principle is, of course, axiomatic. The majority then turns to the law on psychiatric injuries which are unaccompanied by physical trauma and, citing *Thomas v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 449, 423 A.2d 784 (1980), and Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(1), concludes that "the occurrence of the injury and its cause must be adequately pinpointed." 55 Pa. Commonwealth Ct. at 455, 423 A.2d at 787. The majority narrows its definition of "adequately pinpointed" by then excluding from all possibility of compensation, psychiatric injuries which arise from "normal working conditions."[1]

---

[1] In passing, I note the majority's reluctance to set down a standard for "normal working conditions." This is understandable because any such standard would be a guess as to which circumstances in the workplace *could* cause mental injuries and, therefore, be considered "*ab*normal conditions." The medical causes of psychiatric injuries should be left to the medical experts.

This present approach to psychiatric injury cases, which requires the claimant to prove that the psychiatric injury was caused by something abnormal in the workplace, adds an element which is neither required by the Act, nor justified as a means to prevent fraudulent claims. In addition, as the facts of the present case illustrate, the abnormal workplace element can bar legitimate claims to workers' compensation.

There is no question that in the case at bar, Claimant suffered a psychiatric injury, neurasthenia, which arose from the employment and was related thereto. Claimant's medical witness, Dr. Bass, testified unequivocally to this fact. The employer's medical witness, Dr. Byron, testified that Claimant's psychiatric disorder was caused indirectly by his employment. The referee resolved the issue totally in Claimant's favor. Without looking to the workplace to determine if it is normal, we can conclude that Claimant's neurasthenia was work-related, based on the testimony of Claimant's medical expert. This does not require that we embrace the subjective "honest perception" standard, *Deziel v. Difco Laboratories, Inc.*, 403 Mich. 1, 268 N.W. 2d 1 (1978); rather, it simply recognizes that the causes of mental injuries are beyond the expertise of this Court. By adding the abnormal workplace element, I believe that the majority has concluded that psychiatric injuries can only arise from workplaces that are abnormally stressful. But physical injuries arise from perfectly safe and normal working conditions and we hold that they are compensable if the cause of the injury is work-related. The well-worn justification used by the majority to distinguish psychiatric injuries from physical injuries—"[d]ue to the highly subjective nature of psychiatric injuries"—is vague

and unsatisfactory. There is no reason to treat a mental breakdown differently from a stress heart attack.

Finally, if the majority is simply concerned with fraudulent claims, a danger that is equally present in cases where there has been a physical injury, then this factual inquiry should be left to the referee, who is well-suited to ferret out malingerers. In the present case, both medical experts agreed that Claimant's condition was real, not fabricated, and the referee agreed with their conclusions. I would reverse the Board and reinstate the referee's decision.