508 A.2d 624

Florence Andracki, Petitioner *v.* Workmen's Compensation Appeal Board (Allied Eastern States Maintenance), Respondents.

Argued March 11, 1986, before Judge CRUMLISH, JR., and Judges ROGERS and COLINS, sitting as a panel of three.

*James A. Hickey, Hickey & Reitmeyer,* for petitioner.

*Joseph F. Grochmal,* with him, *N. R. Zuschlag* and *Michael D. Sherman, Fried, Kane, Walters & Zuschlag,* for respondent, Allied Eastern States Maintenance.

OPINION BY JUDGE COLINS, April 29, 1986:

Florence Andracki (claimant) has appealed an order of the Workmen's Compensation Appeal Board (Board), which reversed a referee's decision awarding her compensation for job-related mental disability, pursuant to Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act),[1] 77 P.S. §411.

The record reveals the following facts. On February 28, 1978, Allied Eastern States Maintenance (employer) hired the claimant as a day matron. The duties of this position are not of record. Within the next year of her employment, the claimant became involved in a labor dispute arising from management decisions regarding employee placement.[2] Subject to the provisions of the extant bargaining agreement, the employer shifted a senior employee into the claimant's day position and informed the claimant that she would thereafter be required to work the night shift. There is no indication that the night position entailed different responsibilities; rather, the only change involved the hours of the claimant's employment. The claimant became distraught by this notification, such that she was unable to continue working; her son was summoned to take her home. On the same day, she was examined by her family physician who diagnosed an anxiety depression[3] and pre-

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411.

[2] We must emphasize that our comprehensive review of the record reveals only the barest facts regarding the interactions of the union, the employer and the claimant which led to this claim. The employer, in his brief to this Court, offers a lengthy version of the facts, in essence, dehors the record and not subject to our review. *McKenna v. Pa. State Horse Racing Commission,* 83 Pa. Commonwealth Ct. 116, 476 A.2d 505 (1984).

In her claim petition, the claimant defined her injury as "employment conditions and occurrences relating to shift of jobs and turn assignments."

[3] The claimant's physician defined an anxiety depression as "nervous tension plus a very marked letdown feeling."

scribed antidepressant medication. The claimant did not return to work for the employer until October 12, 1979, at which time, she assumed employment as a heavy cleaner, at wages greater than her pre-injury position.

At the hearing before the referee, the claimant testified in her own behalf. Her testimony is obtuse. She did indicate that the employer had represented to her that, as a result of seniority in her building, she would never be required to work the night shift; she believed the employer lied to her about possible night employment. The claimant expressed dissatisfaction with the machinations of the seniority system and the employer in general as follows:

> Q.   Now, you had a problem with Ralph Terry who was the head of your Union, isn't that correct?
>
> A.   I didn't have no [sic] problem. He come up there and accused me of things that wasn't true. . . . It was the company that did it. Ralph Terry had nothing to do with what happened to me. They're trying—I don't know what they're trying to do to me.

The claimant also introduced the deposition testimony of her treating physician, Dr. McKeating, who opined that the claimant's anxiety depression was work-related and that she was not able to work during the course of her treatment. Dr. McKeating authorized the claimant's return to work in October, 1979, because her condition had improved; she did not consult him again following her return to work.

The employer did not offer evidence at the hearing.

The referee determined that the claimant's anxiety depression was directly related to her employment and awarded compensation. The Board characterized the issue as "one of a job dispute, rather than a loss of earn-

ing power" cognizable under the Act and vacated the referee's decision. It is from this decision that the claimant appealed.

Because the claimant, who had the burden of proof, prevailed before the referee, and the Board took no additional evidence, our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or a necessary finding of fact was unsupported by substantial evidence. *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 87 Pa. Commonwealth Ct. 436, 487 A.2d 477 (1985). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Thomas v. Workmen's Compensation Appeal Board (Atlantic Refining Co.)*, 55 Pa. Commonwealth Ct. 449, 452, 423 A.2d 784, 786 (1980). We must determine whether substantial evidence supports the referee's finding that the "claimant's employment conditions relating to job shifts and turn assignments involved between the union, the company and claimant caused claimant to experience anxiety depression which . . . was an injury related to [her] employment."

This Court has defined the parameters of a compensable mental or emotional disability within the provisions of Section 301(c) of the Act. *See Allegheny Ludlum Steel Corp. v. Workmen's Compensation Appeal Board (Fisher)*, 91 Pa. Commonwealth Ct. 480, 498 A.2d 3 (1985); *Russella v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.)*, 91 Pa. Commonwealth Ct. 471, 497 A.2d 290 (1985); *Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa. Commonwealth Ct. 558, 487 A.2d 1053 (1985).[4] The degree of proof de-

---

[4] *See Bell Telephone* for a discussion of the development of the law relative to psychiatric injuries caused by mental stimuli and a summarization of the cases which have facilitated this development.

manded of a claimant in such cases is high. *Hammerle v. Workmen's Compensation Appeal Board (Dept. of Agriculture)*, 88 Pa. Commonwealth Ct. 486, 490 A.2d 494 (1985). "Due to the highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed." *Thomas*, 55 Pa. Commonwealth Ct. at 455, 423 A.2d at 787. Where the causal connection between the injury and the employment is not obvious, unequivocal medical testimony is required to establish causation. *Bell Telephone.*

Further, "evidence of an employee's subjective reaction to being at work and being exposed to normal working conditions is [not] an injury under the Act." *Thomas*, 55 Pa. Commonwealth at 456, 423 A.2d at 788. The claimant must instead produce objective evidence which corroborates his subjective description of the working conditions alleged to have caused the injury. *Russella.* In sum, the burden of proof faced by a claimant to recover workmen's compensation benefits for a psychiatric injury is thus twofold: he must prove by objective evidence that he has suffered a psychiatric injury and he must demonstrate that such injury is other than a subjective reaction to normal working conditions. *Id.*

We find substantial evidence in the record to support the determination that the claimant here suffered from a psychiatric disorder. The more difficult determination arises concerning causation. As previously discussed, unequivocal medical testimony is required to establish the causal connection between the injury and the employment in cases of this nature. The semantics of equivocation has been delineated by this Court in *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa. Commonwealth Ct. 202, 206, 465 A.2d 132, 135 (1983), as follows:

[U]nequivocal medical testimony . . . [requires] that, as to facts which a claimant must prove by

> medical evidence, it is sufficient that [claimant's] medical expert, *after providing a foundation*, testify [sic] that in his professional opinion, . . . he believes . . . or thinks the facts exist. (Emphasis supplied.)

Whether or not medical evidence is equivocal or unequivocal requires a determination of its competency. *Fessler v. Workmen's Compensation Appeal Board (Nationwide Ins. Co.)*, 86 Pa. Commonwealth Ct. 198, 484 A.2d 422 (1984).

On cross-examination, Dr. McKeating testified as follows:

> Q. In response to counsel's question, when we say that these symptoms arose from this work related thing, you're talking about this problem with the union guy that she related to you?
>
> A. She couldn't work. I don't know whether they wanted her to work or what. I didn't quite get that.
>
> Q. Did she tell you something about a change in her shift, the time of her work shift? Did she mention that to you?
>
> A. I don't know whether she said anything about that.
>
> Q. But she did mention to you about the trouble with the union?
>
> A. Yes.

We find that Dr. McKeating's testimony lacks the factual foundation necessary for a finding of work relatedness concerning the claimant's mental disorder so as to render his testimony incompetent.[5]

---

[5] Unequivocal medical testimony means that the medical witness must do more than testify that the claimant's condition "might have been" or "probably was" the result of the claimant's work. *Philadelphia College of Osteopathic Medicine*, 77 Pa. Commonwealth Ct. at 206, 465 A.2d at 135. Dr. McKeating testified as follows:

Dr. McKeating's testimony fails to "pinpoint" the occurrence of the claimant's injury and its causation. *Thomas*. Indeed, his testimony at most reveals that the claimant's disability stemmed from anxiety regarding the union. We believe employee dissatisfaction with union representation is properly addressed to the election process rather than the Workmen's Compensation Act. Similarly, the claimant's dissatisfaction with the application of the seniority system in job placement is a matter for grievance arbitration procedures; the record indicates that the claimant was involved in such procedures during the course of her employment.

Dr. McKeating's testimony does not support the claimant's allegation that her disability was triggered by the employer's notification that she had been shifted to night employment, nor does it appear that the claimant discussed with him why she found the prospect of night employment so distressing.

---

Q. She described for you the problems that she was having at work?
A. Yes.
Q. It was your opinion that these described work related problems were a cause of the anxiety, depression that you observed?
A. I think so. I have seen her before and she had never had that problem.
Q. [D]o you have an opinion based on a reasonable degree of medical certainty . . . as to whether or not the condition you previously described, that is, anxiety, depression, was caused by her work related or employment difficulties?
A. [I]t is work related.
Q. Do you have an opinion . . . as to whether Florence Andracki was employable during this period that you treated her for anxiety, depression?
A. I don't think so.

While Dr. McKeating expressed his opinion with requisite certainty, we maintain that his incomplete grasp of the claimant's work situation precludes our finding his testimony to be competent.

Assuming arguendo, that Dr. McKeating's testimony adequately establishes the causal connection between claimant's injury and her employment, we cannot find that the claimant has sustained her burden of proving her injury is other than a subjective reaction to normal working conditions. The normal working conditions of her employment were defined by the seniority provisions of the union contract. If the application of these provisions effected the claimant's shift to night employment, we cannot find that same constituted abnormal working conditions. Nor has the claimant offered objective evidence to corroborate her allegations of employer harassment. Changes in working hours necessitated by seniority provisions of union contracts are common in the workplace. We must conclude that the claimant's psychic injury resulted from a subjective reaction to normal working conditions and is not cognizable under the Act.

Accordingly, we affirm the order of the Board.

ORDER

AND NOW, April 29, 1986, the order of the Workmen's Compensation Appeal Board, No. A-84654, dated August 25, 1983, is affirmed.