587 A.2d 901

**Larristine ARCHER, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (GENERAL MOTORS and Royal Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 14, 1990.

Decided March 5, 1991.

310

B. Adam Sagan, Flager & Sagan, Trevose, for petitioner.

John B. Allessandroni, Swartz, Campbell & Detweiler, Philadelphia, for respondents.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Larrastine Archer (the claimant) appeals an order of the Workmen's Compensation Appeal Board (the Board) which reversed a decision of a referee awarding the claimant

benefits for temporary total disability. We reverse the Board and reinstate the decision of the referee.

The claimant was employed by General Motors at its plant in Bensalem, a warehouse for parts. The claimant's job, which entailed the use of an electric crane, was to gather various parts from the storage areas and place those parts on a conveyor belt. On January 3, 1985, the claimant had completed all of her work and was talking with other employees who had also completed their tasks. The claimant's supervisor approached the group and told them to disperse. He then told the claimant to get back to work. When she told him she had nothing to do because the computer which generated the assignments was not operating, he began shouting at her and told her to resume working. When she again told him there was no work, the supervisor suspended her for the remainder of her shift and for the next day. Because she never received official notification of the suspension, the claimant showed up for work the next day. Her supervisor began giving her work orders despite the fact that all of her fellow employees' work orders were given to them by a dispatcher. When she questioned the supervisor about this procedure, she was told she was again suspended. The claimant became hysterical, left work and was taken to a nearby hospital emergency room where she was given a tranquilizer. She remained under a doctor's care for a little more than two months.

She returned to work on March 15, 1985. At that time, the supervisor with whom she had the difficulties was not working and the claimant encountered no problems at work. On March 19, the supervisor in question returned to work. She testified that he and his superior followed her around the plant and watched her every move. She testified that she was operating the electric crane and doing her job while picking at a salad she had. The claimant testified that it was common for people in her job to eat and work at the same time. The supervisor and general supervisor approached her and told her to stop eating and begin working.

She responded that she was doing her job. When she told the pair that she had been working and would continue to do so if they did not interrupt her, she was told she was again suspended. The supervisors called security and the claimant was escorted out of the plant.

The claimant did not return to work for three months. During this period, she was treated by a psychiatrist. She returned to work on June 17, 1985, and has had no problems. The claimant filed a claim petition, seeking benefits for the periods from January 4, 1985 to March 15, 1985 and from March 20, 1985 to June 17, 1985, alleging that she had been disabled as the result of a work related injury. At a hearing held before the referee, the claimant described the incidents mentioned above. In addition, she testified that she had been subject to harassment from the supervisor since October, 1984. That harassment consisted of incidents similar to those described above in which the claimant was accused of not working even when she had completed all tasks. She also testified that she had been singled out for such treatment.

The claimant also presented the testimony of Dr. Maurice Pressman, a board certified psychiatrist. He opined within a reasonable degree of medical certainty that the claimant had been disabled because of anxiety and depression for the two periods during which she was not working. He also testified that the anxiety and depression were caused by the harassment in general and the two incidents specifically.

The employer also presented evidence. The two supervisors testified that they had never harassed the claimant or treated her differently than her fellow workers. They also testified the claimant's descriptions of the incidents were inaccurate in that there was always work to do and, in fact, on the dates in question, she was behind in her work. Further, her immediate supervisor testified that he never personally handed her work assignments. The employer also presented medical testimony which contradicted the claimant's medical expert.

The referee specifically credited the testimony of the claimant and specifically rejected the testimony of the supervisors. The referee also accepted claimant's medical testimony over the medical testimony offered by the employer. The referee found that the claimant had been disabled from a work related injury during the two periods in question and awarded her benefits. On appeal, the Board reversed concluding that, since the claimant had failed to offer any corroborating evidence to support her allegations of harassment, she had failed to meet the burden of proof applicable to cases involving psychiatric injury. The claimant then sought review in this Court.

■■■ Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether all necessary findings of fact are supported by substantial evidence. *Papa v. Workmen's Compensation Appeal Board (Franklin Mint Corp.),* 121 Pa.Commonwealth Ct. 10, 549 A.2d 1352 (1988). We have long held that work related psychiatric injuries are compensable under Section 301(c) of The Pennsylvania Workmen's Compensation Act (the Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1). *University of Pittsburgh v. Perlman,* 49 Pa.Commonwealth Ct. 347, 405 A.2d 1048 (1979).

In *Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance),* 96 Pa.Commonwealth Ct. 613, 508 A.2d 624 (1986), relied upon by the Board in reversing the referee, we explained:

> The degree of proof demanded of a claimant in such cases is high. *Hammerle v. Workmen's Compensation Appeal Board* (Dept. of Agriculture), 88 Pa.Commonwealth Ct. 486, 490 A.2d 494 (1985). 'Due to the highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed.' *Thomas [v. Workmen's Compensation Appeal Board (Atlantic Refining Co.) ],* 55 Pa.Commonwealth Ct. [449,] 455, 423 A.2d [784,] 787 [1980]. Where the causal connection between the injury and the employment is not obvi-

ous, unequivocal medical testimony is required to establish causation. *Bell Telephone [v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa.Commonwealth Ct. 558, 487 A.2d 1053 (1985) ].

Further, 'evidence of the employee's subjective reaction to being at work and being exposed to normal working conditions is [not] an injury under the Act.' *Thomas*, 55 Pa.Commonwealth Ct. at 456, 423 A.2d at 788. The claimant must instead produce objective evidence which corroborates his subjective description of the working conditions alleged to have caused the injury. *Russella [v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.)*, 91 Pa.Commonwealth Ct. 471, 497 A.2d 290 (1985) ]. In sum, the burden of proof faced by a claimant to recover workmen's compensation benefits for a psychiatric injury is thus twofold: he must prove by objective evidence that he has suffered a psychiatric injury and he must demonstrate that such injury is other than a subjective reaction to normal working conditions. *Id.*

*Andracki*, 96 Pa.Commonwealth Ct. at 617–18, 508 A.2d at 626.

■ The claimant argues that the Board committed an error of law in holding that she was required to offer corroborating evidence of the harassment to which she was subjected. As the Board explained in its opinion, "Claimant's own testimony suggests only subjective reactions to normal working conditions." (Opinion of the Board, 5/29/ 90.) We cannot agree that the supervisors' treatment of the claimant, which she described in testimony specifically credited by the referee, is a "normal working condition" in the context of this litigation. To understand what is meant by "normal working conditions", we must review cases involving psychiatric injuries.

In 1972, the Legislature amended the Act thereby creating a profound change with regard to the compensability of psychiatric injuries. Prior to that amendment, Section 301(c) of the Act provided that the "terms 'injury' and

'personal injury', as used in this act, shall be construed to mean only violence to the physical structure of the body, and such disease and infections as naturally results therefrom." When presented with questions involving psychiatric injuries, the courts were bound by this legislative pronouncement. An employee who was disabled because of a psychiatric injury could recover if it was proven that the psychiatric injury was caused by an accidental injury occurring in the course of employment. *Holobinko v. Moshannon Smithing Coal Co.*, 145 Pa.Superior Ct. 489, 21 A.2d 440 (1941) (employee disabled from a psychiatric injury which was the direct result of a slip and fall at work); *Seko v. Hub Knitting Co.*, 142 Pa.Superior Ct. 309, 16 A.2d 138 (1940) (employee disabled from a psychiatric injury which was the direct result of a needle of a knitting machine penetrating the employee's finger); *Redrick v. Knapp Brothers Co.*, 127 Pa.Superior Ct. 92, 193 A. 117 (1937) (employee's death was the result of a mental condition where the employee would not eat or drink after stepping on a nail at work). Subsequently, it was held that physical trauma was not necessary and that benefits under the Act could be collected where excitement or stress alone which resulted from an accident caused a *physical* injury. *Stump v. Follmer Trucking Co.*, 448 Pa. 313, 292 A.2d 294 (1972) (employee died from a heart attack caused by excitement following an automobile accident).

With the Act of March 29, 1972, P.L. 159, 77 P.S. § 411(1), the Legislature changed Section 301(c) to read that the

terms 'injury' and 'personal injury', as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury....

The major change, as can be seen, was the deletion of the requirement of "violence to the physical structure of the body." In *Workmen's Compensation Appeal Board (Var-*

*enda) v. Jeddo Highland Coal Co.,* 19 Pa.Commonwealth
Ct. 90, 338 A.2d 744 (1975), we held that an injured employee no longer was required to prove an accident in order to recover for a work related injury. There, the employee suffered a fatal heart attack after performing a physically arduous task. With regard to psychiatric injuries, we held in *Steinle v. Workmen's Compensation Appeal Board (Borough of Yeadon),* 38 Pa.Commonwealth Ct. 241, 393 A.2d 503 (1978), that an employee disabled from an ischemic heart condition which was triggered by work related stress could recover under the Act. It was not until 1980, however, that this Court allowed recovery under the Act for a purely psychiatric injury in the absence of either an accident or an accompanying physical injury. In *University of Pittsburgh,* we held that a widow could recover on a fatal claim petition for her husband's suicide when the fact finder believed expert testimony that (1) the inability to obtain necessary support on the job caused a depressive psychotic reaction and (2) the mental illness led to an irrational frenzy in which the decedent took his own life.

Since our decision in *University of Pittsburgh,* we have agonized over this question of when there can be recovery for a purely psychiatric injury when there is no accident or physical injury. Our primary concern, as set forth in case law, has been the highly subjective nature of most such injuries, which lead to the aforementioned prohibition against recovery in cases where the injured employee had a subjective reaction to normal working conditions. As we have explained:

> [W]e note that work stress is present in varying degrees in all walks of life. Many occupations are by their nature highly stressful. We believe, however, that to countenance the distribution of workmen's compensation benefits to all potential claimants who may succumb emotionally to the demands and circumstances of their otherwise normal employment would be to usher in a wide spectrum of compensability heretofore unenvisioned by the General Assembly.

*Sibrava v. Workmen's Compensation Appeal Board (TWA)*, 113 Pa.Commonwealth Ct. 286, 290, 537 A.2d 75, 77 (1988).[1]

■ The question of what constitutes normal working conditions is one of law. See *Pate v. Workmen's Compensation Appeal Board (Boeing Vertol Co.)*, 104 Pa.Commonwealth Ct. 481, 522 A.2d 166 (1987). We have held that an attorney's heavy work load and lack of secretarial help is a normal working condition. *Moonblatt v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 85 Pa.Commonwealth Ct. 128, 481 A.2d 374 (1984). We have also held that being taken to task by supervisors for poor workmanship, even if the work is tedious and painstaking, is normal. *Pate* (dicta). Further, the application of seniority provisions of a union contract requiring one to work a different shift is a normal working condition. *Andracki*. Losing one's job due to modernization is also normal. *Kemp v. Workmen's Compensation Appeal Board (Elkland Electric Co., Inc.)*, 121 Pa.Commonwealth Ct. 23, 549 A.2d 1365 (1988).

There have been cases decided by this Court which have dealt with the question of harassment and mistreatment. In *Hirschberg v. Workmen's Compensation Appeal Board (Department of Transportation)*, 81 Pa.Commonwealth Ct. 579, 474 A.2d 82 (1984), the employee claimed that his disabling mental problems were caused by harassment and mistreatment by his supervisors. The employer presented evidence that the claimant had not been mistreated. The referee chose to believe the employer's evidence in this regard; we held that the denial of benefits based upon this credibility determination was beyond our review. We went on to hold that a disabling psychiatric condition caused by an honest but mistaken perception of working conditions

---

1. We recognize there are compelling arguments against the "abnormal working conditions" rule. *Martin v. Ketchum*, 523 Pa. 509, 568 A.2d 159 (1990) (Larsen, J., dissenting). In that case, however, a majority of the Supreme Court refused to accept these arguments. Advocates against the "abnormal working conditions" rule must, therefore, seek redress from the Legislature.

was not an injury under the Act. In *McDonough v. Workmen's Compensation Appeal Board (Department of Transportation)*, 80 Pa.Commonwealth Ct. 1, 470 A.2d 1099 (1984), the employee was singled out for public criticism by his supervisor when co-workers were not subjected to the same treatment. That employee eventually developed a fear of going to work which led to a disabling panic disorder. A medical expert testified that the mistreatment at work was the cause of the disability. The referee believed that the mistreatment had occurred and that the employee was disabled, but concluded that the medical expert's testimony, while credible, was equivocal on the important question of causation. The Board affirmed the referee's denial of benefits but stated that, even if the medical testimony could support a finding of causation, nevertheless the claimant had suffered a subjective reaction to normal working conditions. We reversed and held that the testimony of the medical expert was unequivocal; on the question of normal working conditions, we specifically stated:

> [T]he Appeal Board's finding that there was no evidence of other than normal working conditions impinging upon the claimant's psyche was in disregard of the referee's finding that '[f]rom 1962 to 1970, the claimant's boss ... was critical of the claimant's work in a voice loud enough for the co-workers to hear,' *which circumstance is surely not a normal working condition.*

*Id.*, 80 Pa.Commonwealth Ct. at 4, 470 A.2d at 1101 (emphasis added).

In the present case the referee made the following findings of fact.

> 3. Starting in October of 1984, Claimant experienced harassment on the job which occurred on various occasions. The Claimant experienced as many as twenty instances of harassment per week. On January 3, 1985, the Claimant was asked twice to resume working although her work was completed. The Claimant received disciplinary action and was relieved of her shift that day and also her shift on the following day.
>
> . . . .

5. Claimant remained out of work from January 4, 1985 through March 14, 1985. Claimant returned to work on March 15, 1985. On March 19, 1985, Claimant was harassed and accused of not working, although she was performing her work duties. Claimant received disciplinary action....

(Referee's decision, 8/1/88). In light of our decision in *McDonough*, and the express factual findings of the referee, we believe the Board committed an error of law when it concluded that the claimant had been subjected to only "normal working conditions".

The Board also held that the claimant was required to offer corroboration of her mistreatment at the hands of her supervisors. As the Board stated, "The Claimant testified that she was being harassed by her supervisors. The Claimant presented no corroborative evidence on this point. The [employer] presented numerous witnesses to refute any allegations of harassment." (Opinion of the Board, 5/29/90). We believe the Board erred in two respects with regard to this statement.

 The Board's reference to numerous witnesses leads us to conclude that the Board erred grievously. The cases are too numerous to require citation on the principle that questions of credibility are for the referee and not the Board. The Board's conclusion that corroborating testimony of harassment was required cannot be used as an excuse to ignore this principle.

We note initially that to require such evidence would allow an employer to mistreat its employees with impunity as long as such conduct was done in private. Furthermore, we can find no support in the case law for requiring corroboration of harassment and mistreatment. In *McDonough*, the employee did present the testimony of a co-worker that corroborated his allegations of mistreatment; nowhere in that case, however, did we hold that such testimony was required as a matter of law.

■ There are cases in which we have stated that an employee was required to present objective evidence of the abnormal working conditions. Those cases, however, deal with situations where the employee, for whatever reason, was misperceiving the situation at work. For example, in *Russella*, the employee suffered a psychiatric injury which prevented him from going to work; the injury was caused by the employee's belief that the workplace was too noisy although the employee stipulated that the workplace did not create noise problems for others. In affirming the referee's denial of benefits and the Board's affirmance thereof, we stated, "[A claimant] cannot rely solely upon his own account of his working environment to sustain his burden of proving that the injury was not caused by a subjective reaction to normal working conditions." *Id.* 91 Pa.Cmwlth. at 475–76, 497 A.2d at 292. We believe that *Russella* is distinguishable from the present case for one crucial reason. The testimony of the claimant in this case was not limited to her belief that she *felt* she was being harassed; she also described actual events, i.e., that her supervisors accused her of not working when she was performing her duties and that she was singled out by her supervisors and told to go back to work when her duties had just as much been completed as those of co-workers in the same vicinity as the claimant. While objective evidence may well be necessary where an employee is describing subjective feelings, no such evidence is necessary where actual events are being described. As those events constitute abnormal working conditions as a matter of law and because the claimant presented medical evidence which unequivocally established that the abnormal working conditions caused the psychiatric injury, we must conclude that the Board erred in concluding that the claimant failed to prove her case.

Reversed.

## ORDER

NOW, March 5, 1991, the order of the Workmen's Compensation Appeal Board, dated May 29, 1990, at No. A–

97206, is reversed and order of the referee awarding benefits is reinstated.