588 A.2d 984

**Mary E. MARSICO, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (PENNSYLVANIA DEPARTMENT OF REVENUE), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided March 5, 1991.

Reargument Denied April 30, 1991.

Mark S. Silver, Law Offices of Joseph A. Klein, P.C., Harrisburg, for petitioner.

Richard F. Faux, Asst. Counsel, Harrisburg, for respondent.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

Mary E. Marsico (Claimant) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's denial of compensation for a psychiatric disability under Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act).[1]

The issue, as presented by Claimant, is whether the facts as found by the referee established that Claimant had met her burden of proving that she was subjected to abnormal working conditions. The referee found the following facts:

1. Claimant was employed by the defendant, Pennsylvania Department of Revenue as a Clerk II at an average weekly rate of $285.38. Claimant was employed on the 10th floor of the Strawberry Square building.

2. Claimant testified that since childhood she has been afraid of mice and rats.

3. On February 5, 1986 claimant returned to defendant's offices on the 10th floor of the Strawberry Square building which offices were in turmoil over the sighting of a mouse in Personnel. Claimant did not personally observe the mouse nor did she work in the Personnel area of the 10th floor.

4. Claimant testified she became very upset and told her supervisor, Val Klienberg, she could not remain on the 10th floor knowing that this mouse was running around. Claimant was temporarily moved to the 9th floor to perform her job duties. Claimant was assigned to a room on the 9th

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411.

floor without windows and with instructions not to use the telephone. While claimant was attempting to adjust to and work in the 9th floor room, she wondered what was occurring on the 10th floor regarding the mice, and became concerned as to whether there were mice on the 9th floor.

5. Claimant completed work on February 5, 1986, but had difficulty sleeping that night, experiencing dreams and flashbacks of mice. Claimant remained at home on February 6, 1986.

6. Claimant reluctantly returned to work on February 7, 1986, after having been informed that her 10th floor office had been exterminated.

7. Between February 5, 1986, the date of the first incident, and February 13, 1986, the date of the second incident with rodents, no sightings of rodents occurred.

8. On February 13, 1986, claimant arrived at work and was standing at a co-worker's desk discussing a matter when another co-worker called her over repeatedly and on her way over, claimant was summoned by her immediate supervisor to come to the office of the Bureau Director. The Bureau Director indicated to claimant she was unaware of what had transpired on February 5 and that had she been in the office, the matter would have been handled differently.

9. The director then indicated to claimant another mouse was present on the floor that morning, February 13, having been observed in the immediate vicinity of where claimant was standing while talking with her co-worker, and at her feet, and that the reason the one worker called claimant away was so that she would not see the mouse. Claimant reviewed with the Bureau Director her phobia of rodents and was then instructed she was to report to the 9th floor for work.

10. Claimant went to the 9th floor unescorted and after some difficulty, located the same room she had been escorted to on February 5, 1986. Claimant was not alone in the room; there was already an individual in the room and

claimant attempted to perform her job function. Claimant had great difficulty concentrating on her job, finding herself becoming confused, unable to reconcile her accounts, suffering flashbacks to the incidents with the mouse, and feeling punished—imagining and wondering if mice were in the room with her.

11. Claimant continued to feel worse, becoming confused, feeling faint, unable to even think of her 10th floor office telephone number. Claimant had a difficult time obtaining a leave slip from her supervisor, who harassed claimant causing her to become hysterical. Claimant was picked up from work by her husband, but was unable to see her doctor, Dr. William Bush, until 6:00 p.m. Claimant's last day of work was February 13, 1986.

12. Claimant experienced hyperventilation and anxiety attacks, as well as the hives. She had dreams and nightmares about mice from the dates of the incidents until approximately mid-July, 1986. Claimant was initially treated by Dr. Bush, who recommended that she seek the advice and counsel of a psychologist regarding her phobia.

13. Claimant filed a Claim Petition for Compensation on June 10, 1986 alleging she suffered an acute anxiety reaction with severe phobia from exposure to rodents in the workplace on February 5, 1986. Claimant filed a second Claim Petition for Compensation on June 20, 1986 alleging she suffered an acute anxiety reaction with severe phobia from exposure to rodents in the workplace on February 13, 1986.

14. Claimant introduced the testimony of Richard Deter, the physician's assistant to Dr. William Bush who examined the claimant on February 13, 1986. The claimant appeared in a hyperventilating state, suffering from tension, headache symptoms and hives. Mr. Deter diagnosed claimant as suffering from an anxiety reaction and generalized phobia and anxiety.

15. Claimant introduced the testimony of Dr. Paul Anderson, a psychologist who examined the claimant on

February 20, 1986. The claimant appeared in an acutely anxious and disturbed state and related a history of a lifelong fear of rodents. This fear was exacerbated when somebody indicated that they (rodents) were at her place of work.

16. Claimant completed an MMPI, which Dr. Anderson opined revealed a fragile personality structure. Dr. Anderson opined claimant's anxiety reaction would not have occurred without the mice. Dr. Anderson further opined although claimant had a pre-existing phobia for rodents it would be fair to characterize the exposure as an exacerbation of the pre-existing condition.

17. Defendant introduced the testimony of Dr. Gene Cary, a psychiatrist who examined the claimant in December, 1986. Dr. Cary had the claimant complete an MMPI, which he opined revealed a long term pattern of compulsivity, perfectionism and that claimant tended to be an intense worrier who was prone to anxiety. The doctor diagnosed the claimant as suffering from agoraphobia with panic attacks and a compulsive personality disorder.

18. Dr. Cary opined claimant had a pre-existing emotional vulnerability that was instrumental in precipitating the unusually intense anxiety which began in February, 1986. The doctor opined the underlying reason for her reaction was her perception that she wasn't getting emotional support, and particularly was at conflict with her boss. He further opined had claimant been treated differently, perhaps she wouldn't have developed the anxiety that led to the phobia.

19. Your referee finds the testimony of the claimant not credible and unworthy of belief.

20. Your Referee finds the testimony of Mr. Deter unpersuasive as he is not a medical doctor.[2]

2. We note that it is not necessary for a licensed physician's assistant to be a medical doctor in order to be persuasive, but the referee *may* reject the testimony on this basis as it relates to the weight of the evidence.

21. Your Referee finds the testimony of Dr. Anderson unpersuasive that the presence of mice in the workplace caused an exacerbation of claimant's pre-existing condition.

22. Your Referee finds the testimony of Dr. Cary competent and credible.

 Pennsylvania has adopted an objective test for determining whether a psychic injury is compensable. When there is no physical injury as precursor to the psychic injury, the claimant must prove either (a) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time, *Thomas v. Workmen's Compensation Appeal Board*, 55 Pa.Commonwealth Ct. 449, 423 A.2d 784 (1980), or (b) that abnormal working conditions over a longer period of time caused a psychic injury. *Pate v. Workmen's Compensation Appeal Board (Boeing Vertol Company)*, 104 Pa. Commonwealth Ct. 481, 522 A.2d 166 (1987), *petition for allowance of appeal denied*, 517 Pa. 611, 536 A.2d 1335 (1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1025, 98 L.Ed.2d 989 (1988); *see also Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990).

In the case before us, Claimant argued both that an extraordinary event happened (there was a mouse or mice in her workplace) and that she was harassed over a period of time.

 There is no dispute as to the presence of a mouse or mice at Claimant's workplace. The question is whether or not that presence amounted to an abnormal working condition. We hold that the finding of an abnormal working condition is a mixed question of fact and law and is reviewable by this Court. The referee found that, "the presence of mice is not an abnormal working condition, given the fact [C]laimant never saw a mouse at work." We hold that the presence in the workplace of a mouse, or common pest of any variety, is not an abnormal working condition even if an employee does see it. There is nothing extraordinary about a common mouse. Perhaps if an em-

ployer did nothing to control pests and the workplace became overridden with vermin, we could find an abnormality. That was not a fact in the case before us however. For a thorough explanation of this court's standard for abnormal working conditions, *see City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Commonwealth Ct. 483, 583 A.2d 852 (1990).

As to the issue of harassment by a supervisor, the referee apparently found one incident of harassment to be credible and he enunciated this in Finding of Fact # 11 when he said, "Claimant had a difficult time obtaining a leave slip from her supervisor, who harassed claimant causing her to become hysterical."

Upon review of the testimony concerning the harassment, we hold as a matter of law that the behavior of the supervisor in this instance did not amount to harassment. The evidence reveals that she was merely representing Employer's interests and determining whether or not an employee under her supervision was entitled to leave and how long she would be gone. It is true that this questioning *could have been perceived* as harassment by someone like Claimant who was experiencing anxiety bordering on hysteria. However, as stated earlier, the test for abnormal working conditions, when addressing psychic injury in workmen's compensation, is an objective test. Claimant's mere perception of harassment in this case is not enough. This court has held that "an honest, but mistaken, perception of job harassment that aggravates a preexisting anxiety neurosis and which results in disability is not injury under Section 301(c) of the Act." *Hirschberg v. Workmen's Compensation Appeal Board (Department of Transportation)*, 81 Pa.Commonwealth Ct. 579, 583, 474 A.2d 82, 85 (1984).

Because when the facts of this case are reviewed in light of the law, this Court finds that there was not an abnormal working condition, either in the presence of the mouse, or in the behavior of the supervisor, we affirm the order of the Board.

## ORDER

NOW, March 5, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.