617 A.2d 85

**PROCTOR AND GAMBLE PAPER PRODUCTS, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (NAFUS), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 18, 1992.

Decided Nov. 13, 1992.

Brian J. Lenahan, for petitioner.

Sandor Yelen, for respondent.

Before COLINS and KELLEY, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Proctor and Gamble Paper Products (Employer) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of the referee granting Norma Nafus (Claimant) total disability benefits for a psychiatric injury.

On May 23, 1989, Claimant filed a claim petition alleging that as of April 7, 1989, she was totally disabled because of a psychiatric injury sustained as a result of persistent harassment by Employer. Hearings were held before the referee, and, at the conclusion of the hearings, the referee made the following relevant findings of fact:

3. Evidence was presented at a number of hearings, where the Referee heard testimony from the Claimant and her Psychiatrist, and from multiple defense fact witnesses and the Defendant's Psychiatrist. In assessing and analyzing the totality of the fact testimony, it is interesting to note that allegations and assertions made by Claimant, which will be referred to when the Referee analyzes the Claimant's

Doctor's testimony, were assertions of fact that were literally not denied by defense witnesses. Instead, although not denying what occurred, the defense witnesses rather placed the factual content in a different light or focus.... [T]here is literally no factual dispute as to the assertions made by Claimant. Rather within the defense posture, the asserted argument that the facts as alleged by the Claimant happened, but that Claimant for some reason misinterpreted the good intention of the Defendant and reacted in a manner not intended.

4. Claimant presented the medical testimony of her examining psychiatrist, Dr. Anthony Denaro, who testified as to his examinations and as to the conclusions which he reached relative to the same. Interestingly, Dr. Denaro ... literally repeated the same facts which the Defendant does not deny occurred, but rather that the occurrence of same was, unfortunately for the Claimant, that which the Defendant had to accomplish, by virtue of its rights arising from its Employee Hand Book and within those alleged rights, the asserted right to literally restructure, retrain and rethink the employee.... Dr. Denaro determined that these events, this deliberate and real conduct and action on the part of the Defendant was, in his judgment, a work experience forced on the Claimant that was literally outside the range of usual work experiences and expectations which did cause the markedly distressing reaction of Claimant to this situation, where one's supervisors are persistently offensive, raising questions as to Claimant's obesity, as to the fact that she was °female and for those reasons causing her to feel degenerated. This, in his judgment, constituted a serious threat to her integrity as a person and her pride, and was by virtue of same, humiliated in the presence of others as well as on an individual basis, the destruction of self-esteem. She was even threatened with termination if she missed any more work and was charged by her team leader to go into his office and there told that she would be required to speak in front of her team, i.e., the group with whom she worked and apologize to the other team members for having called

in ill. She was told that she had no concern for her fellow employees and that she really had to decide whether she wanted her job and that she was obliged to develop a written action plan of how she was going to make a change in her reliability. She was further told that she needed to personally speak with the team leadership and to its managers as to how she was going to be more productive at work and how she was going to be a more cohesive part of the team. Even her appearance was criticized . . . at no point in time, was any reference made as to whether her work was of a quality performance and whether she had been less productive . . . .

. . . .

Dr. Denaro diagnosed that Claimant was suffering from a Post Traumatic Stress Disorder, clearly related to these almost incredible events taking place in her work place, and which events in the Doctor's opinion here, were causally related to and caused by these abnormal working conditions. 5. The defense expert . . . was of the opinion that she had a long term personality disorder which goes back to her teen years, and is complicated by her physical obesity, which in his judgment, contributes to poor health, and that as been compounded by repeated surgeries and that this causes nausea and vomiting along with abdominal complaints and that none of this condition is at all related to her work place. The Doctor further acknowledges that the disagreement between him and Dr. Denaro was that he did not believe that the conditions which Dr. Denaro attributes the disorder to were in fact abnormal working conditions and that the Doctor was satisfied that what the Defendant did in terms of stimulating and redirecting people in order to make them better employees was not a conditioning that was unusual or abnormal but rather constructive conditioning that was totally common in the work place. 6. [A]fter evaluating the medical evidence in this case as Dr. Denaro indicates, and the Referee so finds, that Claimant is in fact suffering from Post Traumatic Stress Disorder

which is due entirely to and causally related with the incredible work conditions which existed at Defendant's plant.... [I]t is clear in the Findings herein that the attempt by the Defendant ... constituted and extreme and unusual work environment which created an abnormal work influence and an attempt by the employer to subject its employee to a mind inquisition which is incredulous....

The referee granted the Claimant total disability benefits. Employer appealed to the Board, which affirmed the referee, and this appeal followed.

Employer presents two issues for our review: (1) whether Claimant sustained her burden of proving that she suffered a psychic injury; and (2) whether Claimant presented competent expert medical testimony on the issue of causation when her medical expert based his professional opinion on statements made to him by the Claimant which were not substantiated by the evidence. "Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether all necessary findings of fact are supported by substantial evidence." *Archer v. Workmen's Compensation Appeal Board (General Motors)*, 138 Pa.Commonwealth Ct. 309, 313, 587 A.2d 901, 903 (1991).[1]

 A claimant alleging that he or she has suffered a work related psychic injury has the burden of proving "either (a) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time, or (b) that abnormal working conditions over a longer period of time caused the injury." *Blecker v. Workmen's Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 141 Pa.Commonwealth Ct. 317, 322, 595 A.2d 729, 732 (1991). A claimant must produce objective evidence establishing that the mental illness is in fact

---

1. We note that Employer neglected to append to its brief the decision of the referee. We remind Employer that an appellant is required to attach to his or her brief copies of "any opinions delivered by any court or other government unit below relating to the order or other determination under review...." Pa.R.A.P. 2111(b).

a work related injury. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990). Evidence showing a subjective reaction to being at work and being exposed to normal working conditions is inadequate to support a finding that a claimant suffered a compensable psychic injury. *Blecker.*

A referee's finding that a claimant was subjected to abnormal working conditions is a mixed question of law and fact and is reviewable by this Court. *Marsico v. Workmen's Compensation Appeal Board (Pennsylvania Department of Revenue)*, 138 Pa.Commonwealth Ct. 352, 588 A.2d 984 (1991). Psychic injury cases, however, are highly fact sensitive, *Blecker*, and our review is dependent on the referee making findings of fact which are sufficiently detailed to allow application of the proper legal principles. *Royal Pizza House, Inc. v. Workmen's Compensation Appeal Board*, 40 Pa.Commonwealth Ct. 82, 396 A.2d 884 (1979).

In the present case, the referee failed to make detailed findings describing the events Claimant experienced in her workplace. Claimant, in her testimony before the referee, alleged numerous instances of harassment by Employer; the referee, however, did not make precise, particularized findings of fact concerning Claimant's allegations of harassment. In Finding of Fact No. 4, the referee recounted, in a general way, Claimant's experiences relative to how Employer's supervisors disciplined her for missing work and their offensive comments to her. That finding, however, does not explain those events in sufficient detail to allow this Court to review the referee's conclusion that Claimant was subjected to abnormal working conditions while working for Employer. Hence, we are unable to decide whether Claimant met her burden of proving that she suffered a psychic injury.

We must, therefore, remand this case to the Board, with instructions that it remand this case to the referee, for additional findings of fact. On remand, the referee is directed to make, using the existing record, particularized findings describing the workplace events that the Claimant asserts caused her psychic injury.

Furthermore, the referee failed to make specific determinations regarding the credibility of the witnesses who testified before him. While one can infer from the referee's decision that he found the testimony of Claimant and her expert witness credible, our scope of review precludes us from inferring credibility or from making credibility determinations. *Mayo v. Workmen's Compensation Appeal Board (Youth Development Center)*, 117 Pa.Commonwealth Ct. 336, 543 A.2d 617 (1988). Therefore, the referee is directed on remand to make specific credibility determinations concerning the testimony presented below.[2]

Accordingly, the order of the Board is vacated, and this case is remanded for the making of findings of fact and credibility determinations as directed by this opinion.

## ORDER

AND NOW, this 13th day of November, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is vacated, and this case is remanded to the Board with instructions that it remand this case to the referee for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

**2.** Employer contends that the testimony of Claimant's medical expert is incompetent, because the expert based his conclusions solely on statements made to him by the Claimant. In the absence of a specific credibility determination concerning Claimant's testimony, however, we cannot decide this issue. *See Butler v. Workmen's Compensation Appeal Board (Commercial Laundry, Inc.)*, 67 Pa.Commonwealth Ct. 393, 447 A.2d 683 (1982).