628 A.2d 519

**Susan M. BUGAY, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (MELLON BANK, N.A., and Standard Fire Ins. Co., Insurance Carrier), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 2, 1993.

Decided June 30, 1993.

566

Jerry B. Landis, for petitioner.

Stewart A. Karn, for respondents.

Before CRAIG, President Judge, McGINLEY, J., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

Susan M. Bugay (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) that affirmed a referee's decision denying Claimant total disability benefits for a psychic injury.

Claimant was employed as a senior teller by Mellon Bank, N.A. (Employer) from January 2, 1979, until October 24, 1989. On June 29, 1987, Claimant was presented with a $1,000,000 check for deposit payable to Executive Life Insurance Co. and endorsed without signature to Gomberg Associates. Claimant was concerned about an apparently questionable endorsement and was advised by her supervisor to accept the check for deposit to the Gomberg account. The check proved to be fraudulently endorsed and in October of 1987 the fraud unit of Employer questioned Claimant about the deposit. Claimant became concerned about her personal liability and began to have headaches as well as experiencing difficulty in sleeping. On October 24, 1989, Claimant left her employment and remains unemployed since that time.

On August 9, 1990, Claimant filed a claim petition for workers' compensation benefits alleging that she suffered a work-related injury in the nature of "[m]ajor depression,

single episode" as a result of being kept "in the dark by Mellon Bank personnel regarding her involvement in the law suit." Claim Petition, August 9, 1990; Reproduced Record (R.R.) at 3, 5. Employer and its insurer, Standard Fire Insurance Company, filed an answer denying all of the allegations in Claimant's petition. A referee's hearing was held.

In support of the claim petition Claimant testified on her own behalf that she is unable to perform any work activity. Claimant also introduced the deposition testimony of L. Alan Wright, M.D. (Dr. Wright), board-certified in psychiatry and neurology. Dr. Wright testified that he first examined Claimant on April 6, 1990, and obtained an occupational history. Dr. Wright testified that Claimant suffers from "major depression of single episode type . . . characterized by many of the symptoms . . . particularly depression, loss of interest and energy, sleep disturbance, appetite problems and difficulty functioning." Deposition of Dr. L. Alan Wright, October 19, 1990, (Dr. Wright Deposition) at 9; R.R. at 69. Dr. Wright opined that Claimant's psychiatric problems are work-related and that she is precluded from returning to her former occupation of bank teller.

The referee found that "the claimant has been subject to stress in the work place which is usual to the occupation and that she has and is suffering from a major depression as a result of the stressful occurrences in the work place, but this is perception to normal working events." Referee's Decision, May 20, 1991, Finding of Fact (F.F.) No. 6. The Board affirmed the referee's decision concluding that "Claimant did not meet her burden of proving that actual, objective abnormal working conditions caused her depression." Board's Decision, July 31, 1992, at 4.

On appeal Claimant contends that she suffers from major depression precipitated by specific, identifiable and abnormal events and that there is no corroborating evidence to support the referee's finding that Claimant's psychiatric illness is a subjective reaction to normal working events.

Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed and whether the necessary findings are supported by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Commonwealth Ct. 455, 576 A.2d 1163 (1990).

Initially, Claimant contends that a $1,000,000 check presented for deposit with a questionable endorsement and the subsequent investigation into the events that led to the deposit cannot be considered normal working conditions. In *Marsico v. Workmen's Compensation Appeal Board (Department of Revenue)*, 138 Pa.Commonwealth Ct. 352, 588 A.2d 984 (1991), we noted that Pennsylvania has adopted an objective test for determining whether a psychic injury is compensable. *Id.* at 358, 588 A.2d at 987. Absent physical injury as a precursor a claimant must prove actual extraordinary events occurred at work which caused the injury, or that abnormal working conditions over a long period of time caused the injury. *Id.* The question of whether a claimant's exposure to abnormal working conditions caused a work-related disability is a mixed question of law and fact, which is reviewable by this Court. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa.Commonwealth Ct. 308, 595 A.2d 725 (1991), *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992). Abnormal working conditions must be proved by objective evidence and cannot be established by Claimant's subjective reactions to normal working conditions. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 519, 568 A.2d 159, 164, 165 (1990) (citing *Russella v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.)*, 91 Pa.Commonwealth Ct. 471, 475–76, 497 A.2d 290, 292 (1985), *petition for allowance of appeal denied*, 516, Pa. 637, 533 A.2d 95 (1987)).

In the present controversy Claimant testified that she did not accept the check for deposit until she consulted her supervisor and received her approval. Claimant testified that although she was questioned by the fraud unit she was never

considered a suspect or named as a party to any law suit.[1]  In
fact Claimant admitted that she was constantly reassured by
her superiors that there was nothing to worry about concern-
ing her role in the deposit of the check as well as any personal
liability.[2]  Although Claimant was placed on a one-month

1.  Stewart A. Karn, Employer's attorney, to Claimant:
    Q:  You mentioned a fraud unit coming in to question you and other
    people.  Did anybody from that fraud unit tell you that you were
    suspected of fraud?
    A:  No.  They told me—they ...
    Q:  If it's no, that answers my question.  My question is simply, did
    they tell you you were suspected of fraud?
    A:  Not that I remember.
    . . . .
    Q:  Mrs. Bugay, did you ever receive a formal notice that you were
    being sued over this matter to which you've testified?
    A:  Personally?
    Q:  Yes.
    A:  No.
    Notes of Testimony, October 4, 1990, (N.T.) at 22, 32;  R.R. at 39, 49.

2.  Mr. Jerry B. Landis, Claimant's attorney, to Claimant:
    Q:  What happened when you learned about this situation?
    A:  I started to get headaches, and I was having trouble sleeping.  I
    tried to talk to my supervisor and let her know that I had a lot of
    questions about my, you know, involvement in this.  I kept getting
    brushed off.  I kept being told, "Don't worry about it."
    Q:  Did you speak to your bank manager about it?
    A:  Yes.
    Q:  What was their [sic] reaction to your complaints?
    A:  That I was worrying unnecessarily.
    . . . .
    Q:  Were you told if you had any problems to contact the attorney?
    A:  After the meeting, one of the attorneys wrote me a letter.  In the
    letter, she outlined, you know, what I had said at the meeting, and
    she told me that she wanted to hear from me to see if what she had
    said I said was what I said.
    So, I called her, and, you know, I told her to the best of my
    recollection that that is what I said.  She told me that she thought
    that I handled the situation very well, and, you know, try not to worry
    about it; if you have any questions—if there's anything I can do to
    help you, let me know.
    . . . .
    Q:  Did you let your supervisor and the others know about this
    situation?
    A:  Yes.
    Q:  What was their reaction?
    A:  I repeatedly tried to talk to Patricia Downs about how all of this
    was upsetting me, and how I would like, you know, somebody to
    answer my questions.  Everytime I approached her I got the same

probation there is no evidence of record that the probation was the result of the deposit of the check.[3] In the every day work place one of the duties of a bank teller is to handle deposits and withdrawals and to be subject to internal inquiries whenever a questionable transaction occurs. Although some of the events experienced by Claimant may have been traumatic for her we find no error in the referee and the Board concluding that Claimant's condition is a subjective reaction to normal working conditions.

■ Claimant next contends there is no evidence to corroborate or support the referee's finding that Claimant's psychiatric illness is caused by a subjective reaction to normal working conditions. In these cases it is the burden of the claimant to prove that the mental injury is an objective reaction to abnormal working conditions. *Marsico.*

Accordingly, we affirm the decision of the Board.

## ORDER

AND NOW, this 30th day of June, 1993, the order of the Workmen's Compensation Appeal Board at No. A91–1227, dated July 31, 1992, is affirmed.

thing, would you quit worrying about this, you're being ridiculous, just forget about it.
N.T. at 8, 10–12; R.R. at 25, 27–29.

3. Claimant's probation period was not entered on her record.