**Andrew GUARACINO, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (PHILADELPHIA NEWSPAPERS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 16, 1994.
Decided Dec. 20, 1994.
Reargument Denied Feb. 7, 1995.

Kevin C. Allen, for petitioner.

Thomas C. Lowry, for respondent.

Before McGINLEY and NEWMAN, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

Andrew Guaracino (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) that reversed a referee's decision granting total disability benefits for a psychiatric injury.

Claimant was employed as a truck driver by Philadelphia Newspapers, Inc. (Employer) and was assigned to deliver bundles of the Daily News to locations in South Philadelphia. On June 26, 1990, Claimant filed a claim petition for worker's compensation benefits alleging that "two supervisors harassed me over my activities as shop steward" and that as a result of such harassment "I broke down emotionally causing a severe anxiety reaction, severe depression headaches, insomnia, tinits [sic], and elevated blood pressure." Claim Petition, June 26, 1990, at 1. Employer denied all of Claimant's allegations.

In support of the claim petition Claimant testified before the referee that on May 1, 1990, Claimant was making deliveries when a bundle of newspapers fell from the back of his truck. Claimant telephoned the company so that he would get credit for the newspapers and not be charged with the loss. Claimant then finished his first route and returned to Eleventh Street and Washington Avenue to collect a second load. Claimant testified that when he arrived at this location two of his supervisors, Jim Rattigan (Rattigan) and Bob Palmo (Palmo), jumped out of a van and stood on either side of him as he attempted to load the newspapers into his truck. Claimant asked whether Rattigan had received the message that Claimant had lost a bundle of newspapers. Claimant testified that Rattigan responded, "Yes, but fuck you. You're not getting it." Notes of Testimony, August 8, 1990, (N.T. 8/8/90) at 7; Reproduced Record (R.R.) at 13a. Claimant also testified that both Rattigan and Palmo began to curse at him and call him names including "cocksucker" and "motherfucker". N.T. 8/8/90 at 12; R.R. at 18a. Claimant testified that his body began to tremble and shake.

Claimant proceeded to the next location where he made an unsuccessful attempt to contact another supervisor to complain about the actions of Rattigan and Palmo. Rattigan and Palmo followed Claimant to this location and when Claimant returned to his truck Rattigan and Palmo again verbally abused Claimant. Claimant testified that Palmo called him "a fucking idiot shop steward" and said "You'll fucking stand there till I tell you when to move". N.T. 8/8/90 at 15; R.R. at 21a. Claimant testified that he felt dizzy and began shaking.

Claimant attempted to drive to his next stop but as a result of his dizziness was only able to go a few blocks. Claimant then telephoned the company and asked them to send a replacement driver. Claimant was taken to the company nurse who sent him home and instructed him to see his family physician. Claimant has not returned to work since this incident.

On May 25, 1990, Claimant was committed to the Philadelphia Psychiatric Center (Center). Claimant spent five days at the Center and was released to the care of Dr. Louis B. Lipschutz, M.D. (Dr. Lipschutz). Claimant testified that he continues to treat with Dr. Lipschutz twice a week. Claimant testified that he still experiences depression and sleeplessness at night, and that he cries at night and paces the floor.

In addition, Claimant testified that the incident of May 1, 1990, was not the first time he had been harassed by Rattigan. Claimant related an incident in 1989 when Rattigan harassed and intimidated Claimant by sticking his finger in Claimant's face and calling Claimant a "dago motherfucker". N.T. 8/8/90 at 39; R.R. at 45a.

Claimant also introduced the deposition testimony of Dr. Lipschutz, a board certified psychiatrist. Dr. Lipschutz testified that he first examined Claimant on May 25, 1990, and obtained an occupational history. Dr. Lipschutz testified that as a result of the May 1, 1990, incident, Claimant "experienced feeling extreme anxiety with shaking, feeling very angry, his mind going blank, and having aggressive impulses to hit the men." Deposition of Louis B. Lipschutz, M.D. (Dr. Lipschutz Deposition), October 1, 1990, at 28; R.R at 130a. At the present time, Dr. Lipschutz testified, Claimant suffers from "a

major depression, ... severe recurrent episode without psychotic features." Dr. Lipschutz Deposition at 37; R.R at 139a. Dr. Lipschutz opined that the May 1, 1990 incident "was the direct cause and precipitant of [Claimant's] present psychological and psychiatric difficulties." Dr. Lipschutz Deposition at 38; R.R. at 140a. Dr. Lipschutz concluded that Claimant is not capable of returning to work at this time. Dr. Lipschutz Deposition at 41; R.R. at 143a.

Employer presented the testimony of supervisors Rattigan and Palmo. Both Rattigan and Palmo testified that they never cursed at Claimant, called Claimant names, or criticized his role as a shop steward. Rattigan and Palmo testified that Claimant's descriptions of the incidents were inaccurate and that they never harassed Claimant. Further, Rattigan and Palmo testified that they were simply attempting to question Claimant about complaints that Claimant was harassing other drivers about their overtime.

Employer also introduced the deposition testimony of Harold J. Byron, M.D. (Dr. Byron), board certified in psychiatry and in Quality Assurance and Utilization Review. Dr. Byron testified that he examined Claimant on December 12, 1990, and obtained an occupational history. Dr. Byron testified that Claimant was either "malingering and consciously exaggerating his complaints ... or he did experience an emotional reaction best classified as an adjustment disorder with mixed emotional features...." Deposition of Harold J. Byron, M.D. (Dr. Byron Deposition), March 13, 1991, at 17; R.R. at 461a. Dr. Byron opined that Claimant did not suffer from a "major depression recurrent in nature." Dr. Byron Deposition at 18; R.R. at 462a. Dr. Byron concluded that Claimant's emotional status is not "such that he's disabled" and that Claimant "is able to return to the type of work for which he's suited by training and experience." *Id.*

The referee found Claimant to be the more credible witness and therefore rejected the testimony of the supervisors to the extent

that it conflicted with Claimant's testimony. Referee's Decision, January 30, 1992, Finding of Fact (F.F.) No. 45; R.R. at 552a. Further, the referee accepted Claimant's medical expert over the medical testimony offered by Employer. F.F. No. 55; R.R. at 554a. Accordingly, the referee found that "claimant has a psychiatric condition of major depression, severe recurrent episode without psychotic features which was caused by the May 1, 1990 work incident." F.F. No. 55; R.R. at 554a. The referee also found that "Claimant has been disabled from returning to work since the date of the incident...." *Id.* Employer appealed the referee's decision to the Board. The Board reversed, stating that they did not believe that "a single episode of 'harassment or mistreatment' constitutes abnormal working conditions under the Act." Board's Decision, April 22, 1994, at 2.

■ On appeal [1] Claimant contends that the referee correctly found: (1) that the increase in Claimant's workload as well as the incidents of harassment by Claimant's supervisors constitute abnormal working conditions; (2) that as a result of these abnormal working conditions Claimant suffers from a psychiatric injury; and (3) that because of such injury Claimant is unable to return to work and is therefore entitled to disability benefits. Employer argues that the Board correctly found that the referee erred as a matter of law in making a finding of abnormal working conditions and awarding disability benefits based solely on the May 1, 1990, incident.

■ Employer contends that the evidence presented by Claimant fails to establish an abnormal working condition sufficient to entitle Claimant to benefits. In *Marsico v. Workmen's Compensation Appeal Board (Pennsylvania Department of Revenue)*, 138 Pa.Commonwealth Ct. 352, 588 A.2d 984 (1991), we noted that Pennsylvania has adopted an objective test for determining whether a psychic injury is compensable. *Id.* at 358, 588 A.2d at 987. Absent physical

---

1. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether all necessary findings of fact are supported by substantial evidence. *Archer v. Workmen's Compensation Appeal Board (General Motors)*, 138 Pa.Commonwealth Ct. 309, 587 A.2d 901 (1991).

injury as a precursor a claimant must prove actual extraordinary events occurred at work which caused the injury or that abnormal working conditions over a long period of time caused the injury. *Id.* The question of whether a claimant's exposure to abnormal working conditions caused a work-related disability is a mixed question of law and fact, which is reviewable by this Court. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller),* 141 Pa.Commonwealth Ct. 308, 595 A.2d 725 (1991), *petition for allowance of appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992). Abnormal working conditions must be proved by objective evidence and cannot be established by a claimant's subjective reactions to normal working conditions. *Martin v. Ketchum, Inc.,* 523 Pa. 509, 519, 568 A.2d 159, 164, 165 (1990) (citing *Russella v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.),* 91 Pa.Commonwealth Ct. 471, 475–76, 497 A.2d 290, 292 (1985), *petition for allowance of appeal denied,* 516 Pa. 637, 533 A.2d 95 (1987)).

■ In the present case, Claimant testified, and such testimony was accepted by the referee as being credible, that he was harassed by his supervisors and that such treatment was not a normal working condition.[2] Verbal abuse by a supervisor intended to harass, degrade, intimidate or belittle is a traumatic experience and should not occur in the everyday workplace. In *Archer v. Workmen's Compensation Appeal Board (General Motors),* 138 Pa.Commonwealth 309, 587 A.2d 901 (1991), we held that the harassment of an employee by her supervisors constituted an abnormal working condition as a matter of law. If an employee suffers an injury due to such abuse, whether the abuse occurs over a period of time or merely on one occasion, the employee has suffered a work-related injury and is entitled to compensation. Claimant produced testimony, which again was accepted by the referee as being credible, that as a result of the abnormal working condition to which he had been subjected, Claimant suffered a mental injury and could not return to work.

Claimant sustained his burden of proving that an extraordinary event occurred at work which caused him injury. Therefore, we find that the referee did not err as a matter of law in concluding that Claimant's psychiatric disability was caused by an abnormal working condition.

Accordingly, we reverse the decision of the Board and reinstate the order of the referee.

### ORDER

AND NOW, to wit, this 20th day of December, 1994, the order of the Workmen's Compensation Appeal Board, at A92–0496, dated April 22, 1994, is reversed and the order of the referee awarding benefits is reinstated.

NEWMAN, J., dissents.

---

2. Kevin C. Allen, Claimant's attorney, to Claimant:

> Q: Was it typical for supervisors to address union employees, as you were addressed, on May 1, 1990?
>
> A: No. Not typically....

> Q: And in your opinion the language and manners that were used on May 1st towards you by Jim Rattigan and Bob De Palma [sic] would you describe that as simply shop talk?
>
> A: No.

N.T. 8/8/90 at 90; R.R. at 96a.